**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

KHALID AUSTIN MAHAMMEND,

    Plaintiff,

    v.                                                                Civil Action No.:  ELH-21-3114

SERGEANT NEAL,
SERGEANT MORGAN,
SERGEANT EMIN,
SERGEANT BRISBON,
OFFICER OLDS,
OFFICER ALSTON,

    Defendants.

**MEMORANDUM OPINION**

The self-represented plaintiff, Khalid Austin Mahammend, filed a civil rights Complaint under 42 U.S.C. § 1983 against defendants Sergeant Neal, Sergeant Morgan, Sergeant Brisbon, Officer Olds, and Officer Alston.  ECF 1.[1]  Defendants filed a "Motion to Dismiss, Or In The Alternative, For Summary Judgment."  ECF 12.  It is supported by a Memorandum (ECF 12-1) (collectively, the "Motion") and exhibits.  Plaintiff opposes the motion.  ECF 15.  Defendants did to reply, and the time to do so has expired.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons explained below, defendants' Motion, construed as a motion for summary judgment, shall be granted.

---

[1] Plaintiff also sued Sergeant Emin.  However, service was not accepted on behalf of Sgt. Emin because the Baltimore County Detention Center could not identify an individual employed there with that name.  ECF 12-1 at 1, n.1.  The Complaint will therefore be dismissed as against Sgt. Emin.

## I. Factual Background

At all times relevant to the Complaint, plaintiff was confined to the Baltimore County Detention Center ("BCDC") as a pre-trial detainee.[2]  Plaintiff claims that from October 23 through November 6, 2021, he complained to defendants Neal, Morgan, Brisbon, Olds, and Alston about his hand being swollen and painful.  ECF 1 at 1.  He states that he could not move his fingers, could not handwash his clothes, and could not take a shower, but none of the officers arranged for plaintiff to receive medical care.  *Id.*

Plaintiff recalls that on November 6, 2021, when he complained to Officer Markez about his hand and wrist, Markez escorted him to the BCDC medical unit, where his hand was x-rayed. ECF 1 at 1.  The x-ray confirmed that his carpometacarpal[3] was broken and dislocated.  *Id.* According to plaintiff, his hand was extremely painful, and the injury was causing him nerve pain "because the dislocation [was] pushing [his] veins up."  *Id.*

On November 9, 2021, plaintiff was transported to St. Joseph's Hospital, where another x-ray was taken.  ECF 1 at 1.[4]  Plaintiff also received an injection of Toradal, as well as prescriptions for Naprosyn and Tramadol.  Plaintiff complains that the medication did not help with the pain, which interrupted his sleep.  *Id.*  Plaintiff recalls: "Dr. Mitchel Anthony Lebel PA-C, told me they couldn't fix my hand."  *Id.*  The doctor explained that if they attempted to fix the injury it would

---

[2] On November 8, 2021, plaintiff entered a guilty plea in two criminal cases and received a sentence of ten years.  *See* ECF 12-2 and 12-3 (Md. Judiciary Case Search dockets).  Plaintiff was transferred from BCDC to Eastern Correctional Institution on November 17, 2021.  ECF 12-4 (External Movement Inquiry); ECF 12-1 at 3.

[3] "Carpometacarpal" is defined as "pertaining to the wrist bones (carpals) and the bones of the palms of the hands (metacarpals), especially to the joints between them."  https://medical-dictionary.thefreedictionary.com (last visited July 20, 2022).

[4] The full name of the hospital is University of Maryland St. Joseph Medical Center.

2

likely pop back out of place causing plaintiff more pain and swelling. *Id.* According to plaintiff, the doctor said plaintiff needed "immediate surgery" and instructed the correctional officers who escorted plaintiff that the doctors at BCDC should schedule plaintiff for an appointment with Dr. Elizabeth Inkellis Langhammer, an orthopedic surgeon. *Id.*; *see also* ECF 1-1 at 1 (After Visit Summary).

As of November 17, 2021, plaintiff had not received surgery to his hand. ECF 1 at 2. He alleges: "The defendants deliberately denied my medical needs by not taking me to BCDC Hospital after me showing and telling them something is wrong with my hand. . . ." *Id.* Further, plaintiff states that he was not taken to the hospital until 18 days after his initial complaint. *Id.* And, he stated that as of the time he wrote the Complaint, it had been "26 days now and still counting" for the surgery, which amounts to "cruel and unusual punishment." ECF 1 at 2.

Plaintiff adds that when Officer Handcock, who escorted plaintiff to St. Joseph's Hospital, gave the doctor at BCDC the reports from St. Joseph on November 9, 2021, "he wanted me to be transferred to a medical unit." *Id.* [5] However, at that time, plaintiff was assigned to protective custody and he understood he would need to be removed from that status before he could be moved to a medical unit. *Id.* The following day, plaintiff gave a "118" to Officer Olds to pass on to "Ms. Ebb and Mr. Hicks" in the classification unit, indicating plaintiff's desire to be removed from protective custody. *Id.* Plaintiff's request was denied and he did not receive a response to his 118 inmate complaint form. *Id.*

Defendants assert that plaintiff failed to exhaust administrative remedies with respect to this claim, that they are entitled to qualified immunity, and that the Complaint does not state a

---

[5] It is not entirely clear who plaintiff is referencing in connection with moving him to a medical unit.

viable constitutional claim.  ECF 12-1.  With regard to the factual allegations, defendants dispute plaintiff's claim that he was not taken to the BCDC medical until November 6, 2021, attaching a record which indicates plaintiff was seen on November 3, 2021.  ECF 12-7 at 3 (Internal Movement History).  However, the document shows only that plaintiff was taken to the medical unit on November 3, 2021; there is no indication as to why he was taken there, if he was seen, or what was done.  *Id.*  From the documentation provided, it appears that plaintiff was in the medical unit from 2:25 a.m. to 2:48 a.m., when he was returned to his housing unit.  *Id.*[6]  But, there is no entry for November 6, 2021.  *Id.*

In any event, defendants state that because the medical care providers at BCDC were unsure of whether plaintiff required medical treatment for his hand, they, as laymen, could not have known plaintiff had a serious medical need.  ECF 12-1 at 8.  Defendants also point to ECF 12-4, which shows a notation made when plaintiff was transported to St. Joseph's Emergency Room on November 9, 2021.  The notation states that plaintiff was transported for a "non-emergency."  *Id.* at 2.  In defendants' view, this constitutes evidence that plaintiff's medical need was not so obvious that a layman would have recognized the urgent need for care.  ECF 12-1 at 7.  Defendants conclude that because plaintiff does not allege his injury was exacerbated by the brief delay in treatment, he cannot establish a claim of deliberate indifference to a serious medical need.  *Id.*

## II.   Standards of Review

### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917

---

[6] The time is stated in 24-hour format, or "military time."  *See* ECF 12-7 at 2.

F.3d 206, 211 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  And, the court must accept as true all facts alleged in the suit, and draw all reasonable inferences from those facts in favor of the plaintiff.  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). And, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view

such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665.

## B.

The motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom, Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit. *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d).  Moreover, I am satisfied that it is appropriate to address the pending motion as one for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651 659 (4th Cir. 2018).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Brown v. Lott*, ___ F. App'x ___, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of*

*the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346

F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**D.**

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)

(citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

### III.    Discussion

In their motion, defendants argue that (1) plaintiff did not exhaust administrative remedies before filing this lawsuit; (2) they were not deliberately indifferent in arranging for timely medical care; and (3) they are entitled to qualified immunity.  ECF 12-1.

### A.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996), codified as amended at 42 U.S.C. § 1997e(a), governs cases brought by inmates in federal court.  It states, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Inmates must exhaust administrative remedies before bringing any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The grievance process is "important because it gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched."  *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).   The Supreme Court has said that the PLRA's exhaustion requirement allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (stating that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

The process is designed so that prisoners pursue administrative grievances until they receive a final decision as to the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits.  *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004); *see Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).  Moreover, "given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies . . . ."  *Moss*, 2021 WL 5702989, at *4 (citation omitted).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not, as the defendants contend, impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Bock*, 549 U.S. at 215-16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion

is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

BCDC has an administrative remedy process. *See* ECF 12-6 at 2-3 (Inmate Handbook, Complaint Process). The procedure first requires an inmate to submit an "Inmate Request Form #118 or speak with staff to seek informal resolution to complaints." *Id.* at 2, ¶ 2. When a 118 Form is submitted, inmates "should receive a response" within 10 days of receipt. *Id.* at 3, ¶ 2. Complaints that cannot be resolved informally may be pursued by filing an Inmate Complaint Form #200, which must include a description of steps taken to attempt an informal resolution. *Id.* at ¶ 3. The Form #200 is submitted by placing the completed form in a housing unit mailbox or delivering it to a supervisor. *Id.* at ¶ 4. A response to the Form #200 is due within 15 days of receipt. *Id.* at ¶ 6.

Plaintiff indicates in his Complaint that he submitted a Form 118 to Officer Olds on November 10, 2021, after he had received medical attention and a recommendation for his placement on a medical tier was made. ECF 1 at 2. It is unclear whether plaintiff's Form 118 pertained only to his housing assignment, or whether it also concerned his medical treatment. Defendants assert it did not allege any wrongdoing on their part. ECF 12-1 at 5. But, they have

not provided this court with any documentation of the actual administrative complaint that was filed.

In short, there is nothing in the record before me to support a conclusion that plaintiff failed to raise the substance of his complaint in the Form 118 he submitted. Absent such evidence, defendants have not established that plaintiff failed to exhaust administrative remedies.

**B.    *Deliberate Indifference to Serious Medical Need***

Plaintiff was a pretrial detainee at the relevant time. He asserts cruel and unusual punishment due to alleged inadequate medical care, and invokes the Fifth, Eighth, and Fourteenth Amendments. ECF 1 at 2. A pretrial detainee's claim of cruel and unusual punishment arises under the Fourteenth Amendment, but courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The Eighth Amendment protects the rights of postconviction detainees. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth

Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

For a plaintiff to prevail in an Eighth Amendment suit as to the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992); *see also Brown*, 240 F.3d at 388 (stating, *inter alia*, that if the decedent "was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care to *detainees* who require it") (emphasis in *Brown*) (internal quotation marks omitted; citation omitted) (citing, *inter alia*, *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983); and *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979)).

Notably, pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *see also Patten v. Nichols,* 274 F.3d 829, 834 (4th Cir. 2001). And, a prison official violates a detainee's Fourteenth Amendment rights when the official is deliberately indifferent to the detainee's serious medical needs. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *see also Hill,* 979 F.2d at 991 (adopting the standard of "deliberate indifference" with respect to the level of care owed to a

pretrial detainee under the Fourteenth Amendment); *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs.") (emphasis added).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" violates the Eighth Amendment and the Fourteenth Amendment. *Farmer*, 511 U.S. at 828; *see Hill*, 979 F.2d at 991. Therefore, a constitutional claim of denial of adequate medical care, whether lodged under the Eighth Amendment or the Fourteenth Amendment, requires a court to analyze the same issue: whether there was deliberate indifference to a serious medical need. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citing *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir. 1988)).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson v. Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837-38).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Mays*, 992 F.3d at 301 (pretrial detainee's medical deliberate indifference claim requires both an objective and subjective component); *Doe 4 ex rel. Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327, 340 (4th Cir. 2021) (same); *see also*

*DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219; *Iko v. Shreve,* 535 F.3d 225,241 (4th Cir. 2008).

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228. And, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must also show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko,* 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Lightsey,* 775 F.3d at 178 (quoting *Farmer,* 511 U.S. at 837). However, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

The subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775

F.3d at 178.; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).  Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result."  *Scinto,* 841 F.3d at 225 (internal alterations omitted).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk."  *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).  But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).  Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011).  And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff complains that the defendants failed to take him to the Medical Unit during the period from October 23, 2021 through November 6, 2021, despite his complaints about his hand. As of November 6, 2021, the medical personnel could not determine whether plaintiff's medical need was actually serious.  So, plaintiff was transported to the hospital a few days later, on

November 9, 2021, where x-rays were taken.  As a result, an orthopedic surgeon was recommended.

None of the named defendants are medically trained professionals.  Rather, they are correctional officers.  Although plaintiff alleges that he told defendants that his hand hurt, he offers no evidence that these defendants were likely to recognize that plaintiff required emergency medical attention for his hand.  In his opposition, plaintiff states that his hand was "super swollen" and is "still in a cast."  ECF 15 at 1.  But, plaintiff does not offer any objective evidence to support his conclusory allegation that because he told defendants that his hand hurt, they violated his constitutional rights when they did not immediately take him to the medical unit for evaluation.

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

It was not until plaintiff received two sets of x-rays and was evaluated by at least two medical care providers that the need for surgical repair of the plaintiff's hand was known.  Plaintiff was transferred out of BCDC less than a week after the referral to an orthopedic surgeon was

issued by St. Joseph Hospital.  Given the circumstances of this case, defendants are entitled to summary judgment in their favor.[7]

## IV.    Conclusion

For the reasons stated, defendants' Motion, construed as a motion summary judgment, shall be granted.  The Complaint as to Sergeant Emin shall be dismissed.  An Order follows.


_____July 22, 2022_____                    _____/s/_____
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[7] In view of this determination, I need not address defendants' qualified immunity defense is not addressed.